UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZAHIR NASERI,<br><br>  Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>  Defendant. | Case No. 24-cv-05413-TSH<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 37 |

## I.   INTRODUCTION

Pending before the Court is Defendant City and County of San Francisco's Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 37. Plaintiff Zahir Naseri filed an Opposition (ECF No. 38) and Defendant filed a Reply (ECF No. 39). The Court finds this matter suitable for disposition without oral argument and **VACATES** the January 23, 2025 hearing. *See* Civ. L.R. 7-1(b). For the reasons stated below, the Court **GRANTS** the motion.[1]

## II.   BACKGROUND

Plaintiff Zahir Naseri has worked as a "TNC" (transportation network company) driver for Uber and Lyft in the San Francisco Bay Area for almost nine years, including in the City and County of San Francisco and at the San Francisco International Airport ("SFO"). Second Am. Compl. ("SAC") ¶ 7, ECF No. 33.

Mr. Naseri alleges that on June 24, 2023, he was driving for Uber with the Lyft application turned off and dropped off an Uber passenger at SFO. *Id.* ¶ 8. Mr. Naseri alleges he was

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 10, 15.

1  "properly displaying an Uber placard."  *Id.*  SFO staff member Robert Aganon and an unidentified

2  coworker stopped Mr. Naseri and told him that his Lyft placard was not in compliance with airport

3  policy because it was a red color, and that a purple placard was required.  *Id.*  Mr. Naseri alleges

4  that he told Mr. Aganon and Mr. Aganon's coworker that the Lyft permit for SFO does not

5  mention the color of the placard or specify that it must be purple, and that he would visit the Lyft

6  office to obtain another placard.  *Id.* ¶¶ 9, 10.  Mr. Naseri alleges that Mr. Aganon "lost his

7  temper," seized Mr. Naseri's Lyft and Uber placards and emblems without his consent, ordered

8  Mr. Naseri to exit his car and told him that he was under arrest.  *Id.* ¶ 9.  Mr. Naseri alleges that

9  during this encounter, Mr. Aganon called Mr. Naseri a "Middle Eastern driver."  *Id.*

10  On June 24, 2024, an SFO staff member contacted Uber and Lyft to have Mr. Naseri and

11  his vehicle permanently removed from SFO.  *Id.* ¶ 12 and Ex. A to SAC.  In response, Lyft

12  permanently banned Mr. Naseri and his vehicle from SFO and Uber banned Mr. Naseri from all

13  California airports.  SAC ¶ 12.  Mr. Naseri received no prior notice or opportunity to contest these

14  bans.  *Id.*  Mr. Naseri alleges he "was subjected to harsher treatment than other drivers for similar

15  or lesser infractions."  *Id.* ¶ 20.  Mr. Naseri alleges that while he received a permanent ban, "other

16  drivers with incorrect placards received warnings or fines[.]"  *Id.*

17  Mr. Naseri filed this action against Defendant City and County of San Francisco

18  ("Defendant" or "the City") in Superior Court for the City and County of San Francisco on July

19  15, 2024, alleging violations of Title VII of the Civil Rights Act of 1964 and violation of Article 1,

20  Section 13 of the California State Constitution.  Compl. ¶¶ 9–12, ECF No. 1 at 7–8.  Defendant

21  was properly served on July 19, 2024.  ECF No. 1 (Notice of Removal).  On August 19, 2024,

22  Defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.  *Id.*

23  On September 9, 2024, Mr. Naseri filed his First Amended Complaint (FAC).  In his FAC,

24  Mr. Naseri alleged violations of Title VII of the Civil Rights Act of 1964; Article I, Section 13 of

25  the California Constitution; the Fair Labor Standards Act; 42 U.S.C. § 12203, California Fair

26  Employment and Housing Act ("FEHA"), and California Unruh Civil Rights Act.  *See* Am.

27  Compl. ¶¶ 12–20, ECF No. 23.  On September 23, 2024, Defendant filed a motion to dismiss

28  Plaintiff's FAC.  ECF No. 27.  On November 13, 2024, the Court granted Defendant's motion to

1  dismiss Plaintiff's claims without leave to amend and granted Plaintiff leave to amend to assert
2  other legal claims. ECF No. 32 at 10.
3        On November 22, 2024, Mr. Naseri filed his Second Amended Complaint ("SAC"), which
4  is now the operative complaint in this action. ECF No 33, SAC. In his SAC, Mr. Naseri alleges
5  eleven claims.[2] Mr. Naseri alleges violations of San Francisco's City Transportation Policy
6  (Claim 1); San Francisco Airport Rules and Regulations (Claim 2); San Francisco Airport TNC
7  Policies (Claim 3); 42 U.S.C. § 1983 (Claim 4); the Equal Protection Clause of the Fourteenth
8  Amendment of the U.S. Constitution (Claim 5); the Due Process Clause of the Fourteenth
9  Amendment (Claim 6); the Fourth Amendment of the U.S. Constitution (Claim 7); California's
10 Unfair Competition Law (UCL) (Claim 9); San Francisco Non-Discrimination Ordinances (Claim
11 10); Article 1, Section 7 of the California Constitution (Claim 11); and the California
12 Administrative Procedure Act (Cal. Gov. Code § 11340) (Claim 12). *See* SAC ¶¶ 16–26. Mr.
13 Naseri seeks, *inter alia*, compensatory and punitive damages, monetary remuneration for pain and
14 suffering, and that he be reinstated as a driver at SFO. *Id.* ¶¶ 27–32. On December 18, 2024,
15 Defendant filed a motion to dismiss Plaintiff's Second Amended Complaint. ECF No. 37. On
16 December 19, Plaintiff filed an Opposition (ECF No. 38) and on January 9, 2025, Defendant filed
17 a Reply (ECF No. 39).

### III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[2] Although the SAC only includes eleven claims, Plaintiff has numbered the claims 1–12 and appears to have omitted a Claim 8. For clarity, the Court refers to each claim using the same numeration as the SAC.

3

544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). A court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV.   DISCUSSION

### A.   Sur-Replies (ECF Nos. 40, 41, 42)

Plaintiff filed an opposition to Defendant's reply on January 9, 2025. ECF No. 40. Defendant subsequently filed an objection to Plaintiff's sur-reply. ECF No. 41. As a basis for filing a sur-reply, Plaintiff argues Defendant's reply was untimely because it was filed and served more than seven days after Plaintiff filed and served his opposition. However, Civil Local Rule 7-3(c) requires a reply to be filed and served "not more than 7 days after the opposition *was due*." Civ. L. R. 7-3(c) (emphasis added). Although Plaintiff filed and served his opposition on December 19, 2024, his opposition was not due until January 2, 2025. The City filed its reply on

4

1  January 9, 2025, not more than 7 days after the opposition was due.  Because Defendant timely

2  filed its reply, the Court does not consider Plaintiff's Opposition to Defendant's Reply (ECF No.

3  40) in deciding this motion, nor does it consider Plaintiff's subsequent Response to Defendant's

4  Objection to Plaintiff's Opposition to Defendant's Reply (ECF No. 42).

**B.    Requests for Judicial Notice**

Federal Rule of Evidence 201 allows the Court to "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  F.R.E. 201(b)(2).  Courts may consider "matters of public record" in deciding a motion to dismiss.  *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1042 (9th Cir. 2015) (quoting *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)).

**1.    Defendant's Request for Judicial Notice**

Defendant asks the Court to take judicial notice of five records:

> 1. Rules and Regulations of the San Francisco International Airport ("SFO"), issued by the Airport Commission of the City ("SFO Rules and Regulations").
>
> 2. Transportation Network Company Commercial Ground Transportation Non-Exclusive Operating Permit at SFO by and between Lyft and the City ("Lyft Permit") dated January 1, 2023.
>
> 3. Notice dated January 20, 2023 regarding "Placards for new TNC permits effective 1/1/2023," from SFO Landside Operations Data Analytics Manager Annie Chung to "Transportation Network Company Permittees" to "Transportation Network Company Permittees" (the "SFO Notice to TNC Permittees").
>
> 4. Plaintiff Zahir Naseri's Government Claim, submitted to the City on July 28, 2023, and which the City received on August 16, 2023.
>
> 5. The City's Notice of Action Upon Claim denying Plaintiff's Government Claim, dated August 22, 2023.

ECF Nos. 37-7 (request for judicial notice); 37-1 (declaration of Edmund T. Wang); 37-2, 37-3, 37-4, 37-5 and 37-6 (Exs. A–E to Wang Decl.).

Plaintiff objects to judicial notice of each of these records.  ECF No. 38-2 at 2–3.  Plaintiff contends that the facts contained within these records are disputed and "not generally known or capable of accurate determination."  ECF No. 38-1 at 2.  However, Plaintiff attaches copies of

5

1    each of these records in support of his opposition and describes each document as a true and

2    correct copy thereof.³  ECF No. 38-1 at 2-3 (Decl. of Zahir Naseri) and Exs. A–E to Naseri Decl.

3    (ECF Nos. 38-4–38-8).  "Generally, district courts may not consider material outside the pleadings

4    when assessing the sufficiency of a complaint under Rule 12(b)(6)[.]" *Khoja v. Orexigen*

5    *Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *see* Fed. R. Civ. P. 12(b)(6); 12(d).  For the

6    Court to consider these records, they must either be incorporated by reference or judicially noticed

7    under Federal Rule of Evidence 201.  *Khoja*, 899 F.3d at 998.

8         As it did in its order on Defendant's motion to dismiss Plaintiff's First Amended

9    Complaint, the Court takes judicial notice of Mr. Naseri's July 28, 2023 claim against the City

10   because it is a matter of public record that is not subject to reasonable dispute and takes judicial

11   notice of the City's August 22, 2023, Notice of Action Upon Claim.  *See Roy v. Contra Costa*

12   *Cnty.*, No. 15-cv-02672-TEH, 2015 WL 5698743, at *2 n.6 (N.D. Cal. Sept. 29, 2015) (taking

13   judicial notice of plaintiff's Government Claim and city defendants' notice rejecting claim).

14        The Court takes judicial notice of the SFO Rules and Regulations because they are matters

15   of public record that are not subject to reasonable dispute and because they are essential to

16   Plaintiff's claims.  *See Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1303 (N.D. Cal. 2020) ("[a] court

17   may also 'take judicial notice of documents on which allegations in the complaint necessarily rely,

18   even if not expressly referenced in the complaint, provided that the authenticity of those

19   documents is not in dispute'") (quoting *Tercica, Inc. v. Insmed Inc.*, 2006 WL 1626930, *8 (N.D.

20   Cal. June 9, 2006)); SAC ¶ 17 (alleging violation of SFO Rules and Regulations).  *See also Chew*

21   *v. City & Cty. of San Francisco*, No. 13-CV-05286-MEJ, 2016 WL 631924, at *1 (N.D. Cal. Feb.

22   17, 2016) ("The Court may take judicial notice of matters of public record, including official

23   municipal enactments, ordinances and statutes.") (citing *Santa Monica Food Not Bombs v. City of*

---

³ Defendant and Plaintiff offers different copies of Mr. Naseri's government claim and of the City's Notice of Action Upon Claim.  The record of Plaintiff's government claim that Defendant submits is marked as received, stamped with a filing number and designated as "airport" (ECF No. 37-5), while Plaintiff offers a copy of the claim without those notations. ECF No. 38-7.  The Notice of Action Upon Claim offered by the City includes a proof of service by mail dated August 22, 2023 (ECF No. 37-6 at 3), while the Notice of Action Upon Claim attached to Plaintiff's opposition does not include the proof of service by mail.  ECF No. 38-8.

1  *Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006)), *aff'd*, 714 F. App'x 687 (9th Cir. 2017).

2  The Court likewise takes judicial notice of the January 1, 2023 Lyft Permit to operate at SFO, as the SAC explicitly references this document and its authenticity is not disputed by Plaintiff. *See* SAC ¶¶ 9, 10, 18; Naseri Decl. at 3 and Ex. B to Naseri Decl. (attaching Lyft Permit in support of opposition).

The Court determines not to take judicial notice of the January 20, 2023 SFO Notice to TNC Permittees, as it is not clear who received this notice. Although Plaintiff offers this same notice in support of his opposition (*see* Naseri Decl. and Ex. C to Naseri Decl.), neither party indicates that Plaintiff was among the "TNC Permittees" who received this notice. *See* ECF No. 37-3 at 2 (Lyft Permit naming Lyft, rather than its drivers, as the "Permittee").

### 2. Plaintiff's Request for Judicial Notice

Plaintiff seeks judicial notice of twenty-seven cases from various courts. ECF No. 38-3. The Court determines not to take judicial notice of these cases, as judicial notice pertains to adjudicative facts rather than case law. *See* Fed. R. Evid. 201. *See also Mohanna v. Bank of Am., N.A.*, No. 16-cv-01033-HSG, 2017 WL 976015, at *2 n.2 (N.D. Cal. Mar. 14, 2017) ("[t]he Court need not take 'judicial notice' of relevant case law"); *Garcia v. Corizon Health, Inc.*, 816 F. App'x 144, 145 (9th Cir. 2020) (unpublished) (denying request for judicial notice of district court case law as "unnecessary").

### C. Federal Claims

Plaintiff alleges four claims under federal law. Mr. Naseri alleges "violation of 42 U.S.C. § 1983," violations of the equal protection and due process clauses of the Fourteenth Amendment of the U.S. Constitution, and violation of the Fourth Amendment of the U.S. Constitution. SAC ¶¶ 19–22.

"[A] litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001). The Civil Rights Act, codified at 42 U.S.C. § 1983, provides in relevant part:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "[M]unicipalities and other local government units . . . [are] among those persons to whom § 1983 applies." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).

The City and County of San Francisco is the sole Defendant in this action.[4] To establish municipal liability for a constitutional violation under Section 1983, plaintiffs "must prove that 'action pursuant to official municipal policy' caused their injury." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 563 U.S. at 691). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (emphasis in original). Official municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61 (citations omitted). Such policy or practice must be a "moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694). An official municipal policy may be either formal or informal. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 131 (1988) (acknowledging that a plaintiff could show that "a municipality's actual policies were different from the ones that had been announced.").

In the Ninth Circuit, a municipality may be liable under section 1983 under three possible theories. *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018). The first is where

---

[4] Plaintiff twice refers to "Defendant Aganon" in his SAC (SAC ¶¶ 9–10) and describes "the defendant" as "SFO staff and airport authority" (SAC ¶ 19). However, Plaintiff only names as a defendant "San Francisco International Airport[,]" "operat[ing] under the authority of the City and County of San Francisco." *Id.* ¶ 3.

8

1   "execution of a government's policy or custom, whether made by its lawmakers or by those whose
2   edicts or acts may fairly be said to represent official policy, inflict[ed] the injury." *Id.* (quoting
3   *Monell*, 436 U.S. at 694). "A policy or custom may be found either in an affirmative proclamation
4   of policy or in the failure of an official 'to take any remedial steps after [constitutional]
5   violations.'" *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) (quoting *Larez v. City of Los
6   Angeles*, 946 F.2d 630, 647 (9th Cir. 1991) (holding that a jury could find a policy or custom of
7   using excessive force from the police chief's failure to discipline officers for such conduct)); *see
8   also Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1235 (9th Cir. 2011) (holding "evidence of a
9   recurring failure to investigate and discipline municipal officers for constitutional violations can
10  help establish the existence of an unconstitutional practice or custom" of using excessive force).
11  Second, "a local government can fail to train employees in a manner that amounts to 'deliberate
12  indifference' to a constitutional right, such that 'the need for more or different training is so
13  obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the
14  policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'"
15  *Rodriguez*, 891 F.3d at 802 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). Third, a
16  municipality may be liable under section 1983 if "the individual who committed the constitutional
17  tort was an official with final policy-making authority or such an official ratified a subordinate's
18  unconstitutional decision or action and the basis for it." *Id.* at 802–03 (quoting *Gravelet-Blondin
19  v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013) (internal quotation marks and citation omitted)).
20        Plaintiff asserts in his opposition that he alleges, *inter alia*, "[a] widespread practice by the
21  City of discriminatory enforcement of transportation-related policies" and "[a] failure to
22  adequately train or supervise employees, leading to violations of Plaintiff's First, Fourth, and
23  Fourteenth Amendment rights[,]" and "[p]olicies that disproportionately impact minority business
24  owners[.]" Opp'n at 3–4. Plaintiff further maintains in his opposition that SFO's ban on him
25  working as a Lyft and Uber driver at the airport and alleged "enforcement of a 'Purple' Lyft
26  placard requirement" indicate "a broader custom or practice that led to the violation of the
27  plaintiff's constitutional rights." Opp'n at 2. But Plaintiff's SAC does not contain allegations
28  regarding any allegedly unconstitutional policy or custom of the City and County of San Francisco

9

that its employees followed and which caused the deprivation of Mr. Naseri's constitutional rights. *See generally* SAC. Nor does Plaintiff allege a disproportionate impact of Defendant's alleged actions on minority business owners or make any allegations regarding the training supervision of employees. *Id.*

The SAC contains references to the City's "transportation policy," SFO's "permit policy," and "SFO TNC permit terms[.]" *See* SAC ¶¶ 8, 10, 15, 16, 18. However, Mr. Naseri alleges that the City *violated* these policies by banning him from working as a driver at SFO; he does not allege that the policies were themselves unconstitutional. Without identifying a relevant allegedly unconstitutional municipal policy or custom, Mr. Naseri cannot establish municipal liability for a constitutional violation under Section 1983. As all of Mr. Naseri's federal claims arise under the U.S. constitution, they must be dismissed.

Accordingly, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's federal claims against the City and County of San Francisco. The Court **GRANTS** Plaintiff leave to amend.

### D.      State Law Claims

Plaintiff's SAC includes three claims under California state law. Plaintiff alleges violation of California's Unfair Competition law; Article 1, Section 7 of the California Constitution; and the California Administrative Procedure Act. SAC ¶¶ 23, 25, 26. Defendant contends Plaintiff's state law claims are time barred because Plaintiff failed to file suit within six months of the City mailing its denial of his Government Claim. Mot. at 26–27.

The California Government Claims Act, Cal. Gov't Code § 810 et seq., "is a comprehensive statutory scheme that sets forth the liabilities and immunities of public entities and public employees for torts." *Cordova v. City of Los Angeles*, 61 Cal. 4th 1099, 1104–05 (2015) (quotation marks omitted). The Government Claims Act requires plaintiffs to present "'all claims for money or damages against local public entities' . . . to the responsible public entity before a lawsuit is filed." *City of Stockton v. Superior Court*, 42 Cal. 4th 730, 734 (2007) (quoting Cal. Gov't Code § 905). A plaintiff seeks "money or damages" when actual damages are the primary relief the plaintiff seeks. *Lozada v. City & Cnty. of San Francisco*, 145 Cal. App. 4th 1139, 1163–64 (2006); *see also Williams v. City of Antioch*, No. 08-cv-02301-SBA, 2010 WL 3632199, at *5

10

(N.D. Cal. Sept. 2, 2010). A plaintiff must file a lawsuit "not later than six months after the date [the notice of rejection] is personally delivered or deposited in the mail." Cal. Gov't Code § 945.6(a)(1). A plaintiff's complaint must "allege facts demonstrating or excusing compliance with this claim presentation requirement[.]" *State of California v. Superior Ct.*, 32 Cal. 4th 1234, 1237 (2004). *See also Mangold v. Cal. Pub. Utilities Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995) (requiring plaintiff to "allege compliance or circumstances excusing compliance" with the California Tort Claims Act).

The Government Claims Act applies to claims for money damages for violations of the California Constitution except where there is a "conflict between the constitutional provisions and the Government Claims Act immunity provisions." *Krolikowski v. San Diego City Employees' Ret. Sys.*, 24 Cal. App. 5th 537, 553 (2018); *see also* Cal. Gov't Code § 815, Legislative Comm. Comments (providing that the Government Claims Act "abolishes all common law or judicially declared forms of liability for public entities, except for such liability as may be required by the state or federal constitution").

In his SAC, Mr. Naseri seeks $350,000 in compensatory damages, $950,000 in pain and suffering, punitive damages of $650,000, and that he be reinstated as a driver at SFO. SAC ¶¶ 27–30. There is no conflict between the Government Claims Act and article I, section 7 of the California Constitution, under which Mr. Naseri brings his lone state constitutional claim.[5] Cal. Const. Art. 1, § 7. Mr. Naseri must therefore allege facts in his complaint demonstrating or excusing compliance with the Government Claims Act to state any of his state claims. Mr. Naseri does not do so.

The Court previously held amendment of Plaintiff's state law claims was futile because Plaintiff failed to bring his claims within six months of the date the City provided notice of rejection of his claims. ECF No. 32 at 9. As discussed in the Court's order granting Defendant's motion to dismiss Plaintiff's FAC, the City mailed a notice rejecting Mr. Naseri's July 28 claim on

---

[5] Moreover, California courts do not recognize a right to seek damages to remedy violations of article 1, section 7(a) of the California constitution, which provides a right to due process. *See Katzberg v. Regents of Univ. of California*, 29 Cal. 4th 300, 328 (2002).

11

August 22, 2023. *See* ECF No. 32 at 9; *see also* ECF No. 37-6 (Notice of Action Upon Claim). The six month period to bring a claim begins running when the notice is deposited in the mail. Cal. Gov't Code § 945.6(a)(1). Mr. Naseri filed his original complaint in Superior Court for the City and County of San Francisco over ten months later, on July 15, 2024. ECF No. 1. Although Mr. Naseri describes his state law claims as "timely," he does not dispute that he failed to bring those claims within six months of the rejection's deposit in the mail. *See generally* Opp'n. Nor does Mr. Naseri allege any circumstances excusing compliance with the Government Claims Act. *Id.* Because Plaintiff's SAC fails to allege compliance or circumstances excusing compliance with the Government Claims Act, his state law claims against the City must be dismissed. Accordingly, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's state law claims. As amendment would be futile, the Court denies Plaintiff leave to amend those claims.

### E. Claims Based on San Francisco Policies, Rules, Regulations and Ordinances

Mr. Naseri alleges violations of San Francisco's City Transportation Policy, San Francisco Airport Rules and Regulations ("SFO Rules and Regulations"), San Francisco Airport TNC Policies, and the City's Non-Discrimination Ordinances. *See* SAC ¶¶ 16, 17, 18, 24.

Mr. Naseri alleges that the City violated its transportation policy by imposing a permanent ban "for a first-time minor violation" and enforcing a "purple" Lyft placard requirement that Plaintiff asserts is not supported by policy or law. *Id.* ¶ 16. Mr. Naseri alleges that this conduct likewise violated the SFO Rules and Regulations because they require progressive enforcement for violations, beginning with fines for first offenses. *Id.* ¶ 17. Mr. Naseri alleges that the City violated the "SFO TNC Permit Terms" dated January 1, 2023, by "arbitrarily enforc[ing] a non-existent policy, violating the principle of proportionality and progressive discipline as outlined by the California Public Utilities Commission Rules (CPUC) Rules and the San Francisco Transportation Policy, by exceeding SFO's authority to permanently ban the plaintiff from all airports in California." *Id.* ¶ 18. Mr. Naseri alleges the City violated San Francisco's Non-Discrimination Ordinances because its treatment of Mr. Naseri was motivated by his protected status. *Id.* ¶ 24. Mr. Naseri alleges he experienced "harassment and escalating penalties" that similarly situated drivers of a different race, color and national origin did not face and that an SFO

employee called Mr. Naseri a "Middle Eastern driver." *Id.* ¶¶ 19, 20, 24.

### 1. Private Rights of Action for Violations of Municipal Policies, Regulations and Ordinances

Defendant contends none of these policies or ordinances create a private right of action. Mot. at 12. Plaintiff asserts that Article 33 of the San Francisco Police Code provides a private right of action. Opp'n at 8. Article 33 of the San Francisco Police Code is a non-discrimination ordinance prohibiting several forms of discrimination within the City and County of San Francisco, including discrimination in certain contexts on the basis of race, color and national origin. Sec. 3301. This article provides for enforcement through civil action (Sec. 3307(c)) and prohibits discrimination by employers, employment agencies and labor organizations (*see* Sec. 3303); discrimination in housing and long-term care facilities (Sec. 3304, 3304.1), in business establishments and public accommodations (Sec. 3305), and by business entities providing home delivery services (Sec. 3305.1). Plaintiff's SAC does not mention or identify Article 33 of the San Francisco Police Code as a basis for any of his claims, let alone identify the section that Plaintiff believes applies to Defendant's conduct. Accordingly, to the extent Plaintiff's claim is based on the alleged violation of the San Francisco police code, the SAC fails to provide Defendant with fair notice of the claims against it. *See Twombly*, 550 U.S. at 555.

### 2. Constitutional Claims for Violations of Municipal Polices, Regulations and Ordinances

Plaintiff maintains that his claims for violations of Defendant's municipal policies, regulations and ordinances do not require those policies to confer a private right of action because they are "premised . . . on the Defendant's misuse of these policies to infringe upon the Plaintiff's constitutional rights." Opp'n at 5–6. However, allegations that a local government violated its own policies and ordinances cannot give rise to a claim of a violation of the U.S. Constitution. *See Ashley v. City & Cnty. of San Francisco*, No. 12-cv-00045-JST, 2014 WL 4627736, at *8 (N.D. Cal. Feb. 4, 2014) ("to the extent that [the plaintiff] contends that [the defendant's] failure to comply with the [Sheriff's] Department's policies in itself violated his Fourth Amendment rights, the contention is unavailing because the Ninth Circuit has squarely rejected the notion that

1 constitutional duties can arise from a governmental entity's policies."). Accordingly, Plaintiff fails to state a constitutional claim for violations of San Francisco's City Transportation Policy, SFO Rules and Regulations, San Francisco Airport TNC Policies, or the San Francisco's non-discrimination ordinances. The Court grants Plaintiff leave to amend such claims.

### 3. State Claims for Violations of Municipal Polices, Regulations and Ordinances

As discussed above, Plaintiff does not allege compliance or circumstances excusing compliance with the Government Claims Act. Accordingly, to the extent any of these policies, rules, regulations and ordinances give rise to state law claims, any such state law claims are barred by the Government Claims Act. Because amendment would be futile, the Court denies Plaintiff leave to amend his claims for violations of municipal policies, regulations and ordinances to the extent they arise under state law.

### 4. Conclusion – Claims for Violations of Municipal Policies, Regulations and Ordinances

Accordingly, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's claims for violations of San Francisco's City Transportation Policy, San Francisco Airport Rules and Regulations ("SFO Rules and Regulations"), San Francisco Airport TNC Policies, and the City's Non-Discrimination Ordinances. The Court **DENIES** leave to amend such claims to the extent they arise under state law, and otherwise **GRANTS** Plaintiff leave to amend these claims, including under municipal law.

## F. Leave to Amend

The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Courts have broader discretion in denying motions for leave to amend after leave to amend has already been granted. *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016) ("[W]hen the district court has already afforded a plaintiff an opportunity to amend the complaint, it has wide discretion in granting or refusing leave to amend after the first amendment, and only upon gross abuse will its rulings be disturbed."); *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003

(9th Cir. 2002).

The Court previously denied Plaintiff leave to amend his previous state law claims, finding amendment of those claims futile because he failed to allege compliance or circumstances excusing compliance with the Government Claims Act. Plaintiff's SAC does not include any such allegations. Accordingly, the Court **DENIES** Plaintiff leave to amend his state law claims. The Court **GRANTS** Plaintiff leave to amend all other claims.

## V.     CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's Second Amended Complaint. The Court **GRANTS** Plaintiff leave to amend his federal claims and to allege claims under municipal law and **DENIES** Plaintiff leave to amend his state law claims. If Plaintiff chooses to file a Third Amended Complaint, he must do so by February 21, 2025.

**IT IS SO ORDERED.**

Dated: January 22, 2025

_____
THOMAS S. HIXSON
United States Magistrate Judge

15