1
2
3
4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    ZAHIR NASERI,                              Case No. 24-cv-05413-TSH

8                    Plaintiff,

9           v.                                  **ORDER DISMISSING FEDERAL
                                                CLAIMS WITHOUT LEAVE TO
10   CITY AND COUNTY OF SAN                      AMEND; ORDER REMANDING NON-
     FRANCISCO,                                 FEDERAL CLAIMS TO SAN
11                                              FRANCISCO SUPERIOR COURT**
                    Defendant.
12                                             Re: Dkt. No. 45

13

14                              **I.    INTRODUCTION**

15          Pending before the Court is Defendant City and County of San Francisco's Motion to

16   Dismiss Plaintiff's Third Amended Complaint pursuant to Federal Rule of Civil Procedure

17   12(b)(6).  ECF No. 45.  Plaintiff Zahir Naseri filed an Opposition (ECF No. 46) and Defendant

18   filed a Reply (ECF No. 47).  The Court finds this matter suitable for disposition without oral

19   argument.  *See* Civ. L.R. 7-1(b).  For the reasons stated below, the Court **GRANTS** the motion as

20   to the federal claims and **REMANDS** the non-federal claims to state court.[1]

21                               **II.    BACKGROUND**

22          Plaintiff Zahir Naseri has worked as a "TNC" (transportation network company) driver for

23   Uber and Lyft in the San Francisco Bay Area for over nine years, including in the City and County

24   of San Francisco and at the San Francisco International Airport ("SFO").  Third Am. Compl.

25   ("TAC") at 2, Factual Allegations ¶ 1, ECF No. 44.

26          Mr. Naseri alleges that on June 24, 2023, he was driving for Uber at SFO with the Lyft

27   application turned off.  *Id.* at 3, ¶ 2.  Mr. Naseri alleges he was "properly displaying an Uber

28   _____

     [1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos.
     10, 15.

placard." *Id.* An SFO enforcement officer and an unidentified coworker stopped Mr. Naseri and told him that his Lyft placard was not in compliance with airport policy because it was a red color, and that a purple placard was required. *Id.* Mr. Naseri alleges that he told these SFO staff members that the Lyft permit for SFO does not mention the color of the placard. *Id.* ¶¶ 3, 4. Mr. Naseri alleges that the SFO enforcement officer[2] "lost his temper," seized Mr. Naseri's Lyft and Uber placards and emblems without his consent, ordered Mr. Naseri to exit his car and told him that he was under arrest. *Id.* ¶ 3. Mr. Naseri alleges that during this encounter, the SFO enforcement officer called Mr. Naseri a "Middle Eastern driver." *Id.* ¶ 3.

On June 24, 2024, an SFO staff member contacted Uber and Lyft to have Mr. Naseri and his vehicle permanently removed from SFO. *Id.* ¶ 6 and Ex. A to TAC (ECF No. 44 at 37–39). In response, Lyft permanently banned Mr. Naseri and his vehicle from SFO and Uber banned Mr. Naseri from all California airports. TAC ¶ 6. Mr. Naseri received no prior notice or opportunity to contest these bans. *Id.* Mr. Naseri alleges Defendant "impos[ed] harsher penalties on Plaintiff than on other Transportation Network Company (TNC) drivers who committed similar or lesser infractions." *Id.* ¶ 50. Mr. Naseri alleges that while he received a permanent ban, "[o]ther TNC drivers committing similar or lesser infractions, such as displaying incorrect placards, were given warnings or fines rather than a permanent ban." *Id.* ¶ 51.

Mr. Naseri filed this action against Defendant City and County of San Francisco ("Defendant" or "the City") in Superior Court for the City and County of San Francisco on July 15, 2024, alleging violations of Title VII of the Civil Rights Act of 1964 and violation of Article 1, Section 13 of the California State Constitution. Compl. ¶¶ 9–12, ECF No. 1 at 7–8. Defendant was properly served on July 19, 2024. ECF No. 1 (Notice of Removal). On August 19, 2024, Defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. *Id.*

On September 9, 2024, Mr. Naseri filed his First Amended Complaint (FAC). In his FAC, Mr. Naseri alleged violations of Title VII of the Civil Rights Act of 1964; Article I, Section 13 of the California Constitution; the Fair Labor Standards Act; 42 U.S.C. § 12203, California Fair

---

[2] In his TAC, Plaintiff alleges that "Defendant" engaged in this conduct. However, the City and County of San Francisco is the only named defendant in this action.

United States District Court
Northern District of California

1    Employment and Housing Act ("FEHA"), and California Unruh Civil Rights Act. See Am.

2    Compl. ¶¶ 12–20, ECF No. 23. On September 23, 2024, Defendant filed a motion to dismiss

3    Plaintiff's FAC. ECF No. 27. On November 13, 2024, the Court granted Defendant's motion to

4    dismiss Plaintiff's claims without leave to amend and granted Plaintiff leave to amend to assert

5    other legal claims. ECF No. 32 at 10.

6         On November 22, 2024, Mr. Naseri filed his Second Amended Complaint ("SAC"). ECF

7    No 33, SAC. In his SAC, Mr. Naseri alleged violations of San Francisco's City Transportation

8    Policy; San Francisco Airport Rules and Regulations; San Francisco Airport TNC Policies; 42

9    U.S.C. § 1983; violations of the Equal Protection and Due Process Clauses of the Fourteenth

10   Amendment of the U.S. Constitution; the Fourth Amendment of the U.S. Constitution;

11   California's Unfair Competition Law (UCL); San Francisco Non-Discrimination Ordinances;

12   Article 1, Section 7 of the California Constitution; and the California Administrative Procedure

13   Act (Cal. Gov. Code § 11340). See SAC ¶¶ 16–26. On December 18, 2024, Defendant filed a

14   motion to dismiss Plaintiff's SAC. ECF No. 37. On January 22, 2025, the Court granted

15   Defendant's motion to dismiss with leave for Plaintiff to amend his federal claims and to allege

16   claims under municipal law and without leave to amend his state law claims. ECF No. 43 at 14–

17   15.

18        On January 24, 2025, Mr. Naseri filed his Third Amended Complaint ("TAC"), which is

19   now the operative complaint in this action. ECF No 44, TAC. In his TAC, Mr. Naseri alleges

20   eighteen claims. Mr. Naseri alleges violation of the First Amendment of the U.S. Constitution

21   (Claims 1 and 16); violation of the Due Process Clause of the Fourteenth Amendment of the U.S.

22   Constitution (Claim 2); violation of the Equal Protection Clause of the Fourteenth Amendment

23   (Claim 3); excessive fines in violation of the Eighth Amendment (Claim 4); unlawful search and

24   seizure in violation of the Fourth Amendment (Claim 5); violation of Article 33 of the San

25   Francisco Police Code (Claims 6–9); violation of the California Public Records Act (Claim 10);

26   destruction of evidence in violation of California Penal Code § 135 (Claim 11); misuse of the

27   discovery process in violation of California Code of Civil Procedure § 2023.010 (Claim 12); "Due

28   Process Rights Violations" (Claim 13); "Destruction of Evidence Presumption" in violation of

United States District Court
Northern District of California

United States District Court
Northern District of California

1  California Evidence Code § 413 (Claim 14); Destruction of Public Records in violation of

2  California Government Code § 34090 (Claim 15); violation of the San Francisco Records

3  Management Policy, Admin. Code Ch. 67 (Claim 17); and obstruction of justice, 18 U.S.C. § 1505

4  (Claim 18). *See* TAC ¶¶ 24–133. Mr. Naseri seeks, inter alia, compensatory and punitive

5  damages, monetary remuneration for pain and suffering, and that he be reinstated as a driver at

6  SFO. *Id.* at 34–35 (Demand for Relief). On February 7, 2025, Defendant filed a motion to

7  dismiss Plaintiff's TAC. ECF No. 45. On February 9, Plaintiff filed an Opposition (ECF No. 46)

8  and on February 28, 2025, Defendant filed a Reply (ECF No. 47).

9  ### III.   LEGAL STANDARD

10       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

11  sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff

12  can prove no set of facts in support of his claim which would entitle him to relief." *Cook v.*

13  *Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted). Rule 8

14  provides that a complaint must contain a "short and plain statement of the claim showing that the

15  pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough

16  facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

17  544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer

18  possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A

19  complaint must therefore provide a defendant with "fair notice" of the claims against it and the

20  grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

21       In considering a motion to dismiss, the court accepts factual allegations in the complaint as

22  true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v.*

23  *St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551

24  U.S. 89, 93–94 (2007). However, "the tenet that a court must accept as true all of the allegations

25  contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements

26  of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at

27  678.

28       If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

4

1    request to amend the pleading was made, unless it determines that the pleading could not possibly

2    be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

3    banc) (citations and quotations omitted).  A court "may exercise its discretion to deny leave to

4    amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to

5    cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . .,

6    [and] futility of amendment.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th

7    Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

8                                      **IV.    DISCUSSION**

9    **A.    Federal Claims**

10          Plaintiff alleges eight claims under federal law.  Mr. Naseri alleges violation of the First

11   Amendment of the U.S. Constitution (Claims 1 and 16); violation of the Due Process Clause of the

12   Fourteenth Amendment of the U.S. Constitution (Claim 2); violation of the Equal Protection

13   Clause of the Fourteenth Amendment (Claim 3); excessive fines in violation of the Eighth

14   Amendment (Claim 4); and unlawful search and seizure in violation of the Fourth Amendment

15   (Claim 5); "Due Process Rights Violations" (Claim 13); and obstruction of justice, 18 U.S.C. §

16   1505 (Claim 18).  TAC ¶¶ 24–85, 122–23, 128–29, 132–33.

17          **1.    Constitutional Claims**

18          "[A] litigant complaining of a violation of a constitutional right does not have a direct

19   cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983."  *Arpin v.*

20   *Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).  The Civil Rights Act,

21   codified at 42 U.S.C. § 1983, provides in relevant part:

22                    Every person who, under color of [state law] . . . subjects, or causes
                      to be subjected, any citizen of the United States or other person within
23                    the jurisdiction thereof to the deprivation of any rights, privileges, or
                      immunities secured by the Constitution . . . shall be liable to the party
24                    injured in an action at law, suit in equity, or other proper proceeding
                      for redress . . .
25

26          "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method

27   for vindicating federal rights elsewhere conferred.'"  *Graham v. Connor*, 490 U.S. 386, 393–94

28   (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  "[M]unicipalities and other

United States District Court
Northern District of California

1    local government units . . . [are] among those persons to whom § 1983 applies." *Monell v. Dep't*

2    *of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).

3          The City and County of San Francisco, a municipality, is the sole Defendant in this action.

4    Plaintiff repeatedly refers to the plural "Defendants" in his TAC (TAC ¶¶ 2, 24–26, 28–33, 35, 37,

5    38, 40–43, 49–55, 57–62, 64–69, 71–77, 79–85).  Plaintiff's TAC also repeatedly alleges that the

6    defendant or defendants are individuals who work for the City and County of San Francisco.  TAC

7    Factual Allegations ¶¶ 3, 5, 6, 35, 40(c), 43(b), 49, 64(a), 68(c), 68(d), 71, 76(c), 76(d), 79, 84(c),

8    84(d).  However, Plaintiff names as a defendant only "San Francisco International Airport[,]"

9    "operat[ing] under the authority of the City and County of San Francisco."  TAC "Parties" ¶ 3; *see*

10   *also* TAC caption page ("Zahir Naseri, Plaintiff. vs. City and County of San Francisco,

11   Defendant.").

12         To establish municipal liability for a constitutional violation under Section 1983, a plaintiff

13   "must prove that 'action pursuant to official municipal policy' caused their injury."  *Connick v.*

14   *Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 563 U.S. at 691).  "The 'official policy'

15   requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the

16   municipality, and thereby make clear that municipal liability is limited to action for which the

17   municipality is actually responsible."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (emphasis

18   in original).  Official municipal policy includes "the decisions of a government's lawmakers, the

19   acts of its policymaking officials, and practices so persistent and widespread as to practically have

20   the force of law."  *Connick*, 563 U.S. at 61 (citations omitted).  Such policy or practice must be a

21   "moving force behind a violation of constitutional rights."  *Dougherty v. City of Covina*, 654 F.3d

22   892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694).  An official municipal policy may be

23   either formal or informal.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 131 (1988)

24   (acknowledging that a plaintiff could show that "a municipality's actual policies were different

25   from the ones that had been announced.").

26         In the Ninth Circuit, a municipality may be liable under section 1983 under three possible

27   theories.  *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018).  The first is where

28   "execution of a government's policy or custom, whether made by its lawmakers or by those whose

*United States District Court*
*Northern District of California*

6

edicts or acts may fairly be said to represent official policy, inflict[ed] the injury." *Id.* (quoting *Monell*, 436 U.S. at 694). "A policy or custom may be found either in an affirmative proclamation of policy or in the failure of an official 'to take any remedial steps after [constitutional] violations.'" *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 647 (9th Cir. 1991) (holding that a jury could find a policy or custom of using excessive force from the police chief's failure to discipline officers for such conduct)); *see also Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1235 (9th Cir. 2011) (holding "evidence of a recurring failure to investigate and discipline municipal officers for constitutional violations can help establish the existence of an unconstitutional practice or custom" of using excessive force). Second, "a local government can fail to train employees in a manner that amounts to 'deliberate indifference' to a constitutional right, such that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Rodriguez*, 891 F.3d at 802 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). Third, a municipality may be liable under section 1983 if "the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* at 802–03 (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013) (internal quotation marks and citation omitted)).

Plaintiff repeatedly alleges that Defendant's "actions . . . reflect a policy, custom, or practice of . . . imposing disproportionate penalties and denying due process to individuals accused of minor infractions" (TAC ¶ 40(a)), as well as an "established pattern of disparate enforcement" under which the City "selectively impos[es] harsher penalties based on race, ethnicity, or other protected characteristics." TAC ¶¶ 40(a), 53(a). *See also id.* ¶¶ 60(a) (alleging pattern or practice of imposing excessive penalties without justification), 68(a) (alleging policy, custom or practice of tolerating or encouraging excessive enforcement actions, including unlawful searches and seizures at SFO), 76(a) (same), 84(a) (same). But these allegations are entirely conclusory. The TAC does not contain specific factual allegations supporting the existence of a policy, custom, or practice of denial of due process, disparate enforcement, excessive penalties or excessive enforcement actions

United States District Court
Northern District of California

1    beyond Plaintiff's own experiences.  Accordingly, Plaintiff fails to state a *Monell* claim against the

2    City based on the existence of an alleged unconstitutional policy or custom.

3          Plaintiff also alleges that Defendant "failed to adequately train and supervise [SFO]

4    enforcement officers." TAC ¶ 40(d); *see also id.* ¶¶ 40(e), 53(b), 68(b), 76(b), 84(b).  "A plaintiff

5    alleging a failure to train claim under *Monell* must show: (1) she was deprived of a constitutional

6    right, (2) the municipality had a training policy that amounts to deliberate indifference to the

7    constitutional rights of the persons with whom its police officers are likely to come into contact,

8    and (3) her constitutional injury would have been avoided had the municipality properly trained

9    those officers." *Bryant v. City of Antioch*, No. 21-Ccv-00590-TSH, 2021 WL 3565443, at *7

10   (N.D. Cal. Aug. 12, 2021) (citing *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1148 (E.D. Cal.

11   2009)).  Plaintiff alleges that "the SFO enforcement officer" with whom Plaintiff interacted

12   demonstrated a lack of knowledge about the date, color, and nature of the alleged infraction" and

13   that Defendant's "actual enforcement practices diverged from its announced policies,

14   demonstrating a failure to ensure consistent training and supervision." TAC ¶¶ 40(d), 40(e).

15   Plaintiff further alleges that Defendant "failed to implement adequate training, oversight, or

16   safeguards to prevent discriminatory practices, exhibiting deliberate indifference to individuals'

17   constitutional rights.' *Id.* ¶ 53(b).  *See also id.* ¶¶ 60(b), 68(b), 76(b), 84(b).  These allegations of

18   deliberate indifference are threadbare and conclusory, and Plaintiff's factual allegations are

19   insufficient to establish the existence of a training policy that amounted to deliberate indifference

20   to the constitutional rights of persons with whom SFO enforcement officers were likely to come

21   into contact.  Plaintiff further does not show that his alleged constitutional injuries would have

22   been avoided had Defendant properly trained the officers.  Plaintiff therefore has not established

23   municipal liability for a constitutional violation under Section 1983 based on a failure to train SFO

24   enforcement officers.

25          Accordingly, Mr. Naseri's constitutional claims must be dismissed.

26   **2.    Obstruction of Justice, 18 U.S.C. § 1505**

27          Mr. Naseri alleges that Defendant "may have obstructed justice under 18 U.S.C. § 1505"

28   by allegedly tampering evidence and withholding documents critical to Plaintiff's case.  TAC

8

1  ¶¶ 132–33.  18 U.S.C. § 1505 is a federal criminal law regarding obstruction of agency

2  proceedings; it concerns evading compliance with civil investigative demands brought by the

3  government agencies.  Mr. Naseri does not allege that Defendant engaged in any conduct

4  prohibited by Section 1505.  Moreover, Section 1505 cannot form the basis for a civil lawsuit

5  brought by Mr. Naseri, as it is a criminal statute that does not provide a private right of action.

6  *See, e.g.*, *Hamilton v. Reed*, 29 F. App'x 202, 204 (6th Cir. 2002).  Accordingly, Mr. Naseri

7  cannot state a claim for violation of 18 U.S.C. § 1505.

8      Accordingly, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's federal claims

9  against the City and County of San Francisco.

10      **3.    Leave to Amend**

11      The Ninth Circuit has "repeatedly held that a district court should grant leave to amend

12  even if no request to amend the pleading was made, unless it determines that the pleading could

13  not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th

14  Cir. 2000).  Courts have broader discretion in denying motions for leave to amend after leave to

15  amend has already been granted.  *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016)

16  ("[W]hen the district court has already afforded a plaintiff an opportunity to amend the complaint,

17  it has wide discretion in granting or refusing leave to amend after the first amendment, and only

18  upon gross abuse will its rulings be disturbed."); *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003

19  (9th Cir. 2002).

20      The Court has twice dismissed Plaintiff's federal claims and twice given him leave to

21  amend those claims.  ECF No. 32 at 10; ECF No. 43 at 15.  The previous dismissal order

22  dismissed Plaintiff's federal claims for failure to satisfy *Monell*, and as discussed above, the

23  *Monell* allegations in the third amended complaint are devoid of any factual content.  The Court

24  thinks that three attempts at pleading federal claims, including two attempts at pleading federal

25  constitutional claims, are a sufficient opportunity, especially when Plaintiff's third amended

26  complaint came nowhere close to satisfying *Monell*.  Moreover, no leave to amend is warranted

27  for Plaintiff's claim under 18 U.S.C. § 1505, as he cannot sue for violation of a federal criminal

28  statute.

1    Accordingly, the Court **DENIES** Plaintiff leave to amend his federal claims.

2  **B.    State and Municipal Law Claims**

3    28 U.S.C. § 1367(c)(3) states that "[t]he district courts may decline to exercise

4  supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed

5  all claims over which it has original jurisdiction . . ."  The Court has dismissed all claims over

6  which it has original jurisdiction.  The Court has original jurisdiction over Plaintiff's federal

7  claims under 28 U.S.C. § 1331, and those claims have now been dismissed without leave to

8  amend.  The Court does not have original jurisdiction over Plaintiff's claims under state or

9  municipal law, as there is no diversity of citizenship between the parties.  TAC Parties ¶¶ 2-3;

10  Compl., ECF No. 1 ¶¶ 2-3 (no diversity of citizenship when lawsuit first filed).

11    Accordingly, the Court declines to exercise supplemental jurisdiction and **REMANDS**

12  Plaintiff's non-federal claims to San Francisco Superior Court.

13    **IT IS SO ORDERED.**

14

15  Dated: May 29, 2025

16

17  THOMAS S. HIXSON
   United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28